UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.                                                  **DECISION AND ORDER**
                                                             10-CR-239S (3) (4)

RICKY PROCTOR and LORENZO HUNT,

                 Defendants.

## I. INTRODUCTION

Defendants Lorenzo Hunt and Ricky Proctor move separately for severance from their co-defendants. (Docket Nos. 415, 416.) Defendants are charged in a 6-defendant, 28-count superseding indictment with, *inter alia*, RICO conspiracy with 50 overt acts (18 U.S.C. § 1962(d)), Racketeering with 26 racketeering acts (18 U.S.C. § 1962(c)), and 26 counts of substantive offenses, including conspiracy to possess with intent to distribute marijuana (21 U.S.C. § 846), maintaining a drug-involved premises (21 U.S.C. § 856(a)(1)), violent crime in aid of racketeering activity (18 U.S.C. § 1959(a)(1)), and possession of firearms in furtherance of drug trafficking (18 U.S.C. § 924(c)(1)). For the following reasons, each motion is denied.

## II. FACTS

Defendants are charged with conspiring and participating in a marijuana distribution ring that operated in the Broadway Market area of the City of Buffalo, NY. Johnny Rounds, one of the six co-defendants, is alleged to be the leader of this distribution ring. He is further alleged to have used several houses in the area as storefronts, of a sort, selling $10 and $20 bags of marijuana through mail slots in the locked doors of the houses. He allegedly used other houses as "stash houses," from which he would retrieve stores of marijuana to supply the distribution houses. Johnny Rounds's co-defendants—Proctor,

Hunt, Donald Rounds, DeMario Stewart, and Broderick Robinson—are each alleged to have worked with him in this enterprise.

In 2009, Johnny Rounds and his crew became entangled in conflict with a rival group known as the LRGP gang, which was distributing drugs several blocks away from where Johnny Rounds operated. This conflict escalated when members of the LRGP gang allegedly broke into one of Johnny Rounds's stash houses and stole drugs, cash, jewelry, and clothing. Thereafter, Johnny Rounds allegedly called a meeting, which Defendants attended, during which he proclaimed that he wanted members of the LRGP dead.

Soon after, members of Johnny Rounds's crew began seeking out and shooting at LRGP members. LRGP members responded in kind. In the violent months that followed, three people were murdered: Brandon Haugabook; Larry Crosland; and Shawn Kozma. In addition to the numerous drug-related offenses, Johnny Rounds and his co-defendants are charged with these murders, either by way of conspiracy or substantive offense.

### III. DISCUSSION AND ANALYSIS

**A.     Severance**

Decisions on severance are reserved to the trial court's discretion and are considered by the Second Circuit to be "virtually unreviewable." See United States v. Harwood, 998 F.2d 91, 95 (2d Cir. 1993); United States v. LaSanta, 978 F.2d 1300, 1306 (2d Cir. 1992) (quoting United States v. Cardascia, 951 F.2d 474, 482 (2d Cir. 1991)). There is, however, a preference in the federal system that defendants who are indicted together be tried together. See United States v. Ventura, 724 F.2d 305, 312 (2d Cir. 1983). This is particularly true when the underlying crime involves a common scheme or plan, in

which case the slight prejudice to co-defendants is outweighed by the judicial economies resulting from avoiding duplicative trials. See United States v. Spinelli, 352 F.3d 48, 55 (2d Cir. 2003); Cardascia, 951 F.2d at 482. Joint trials are efficient, "play a vital role in the criminal justice system," and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." Richardson v. Marsh, 481 U.S. 200, 209-10, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 (1987).

**B.      Rules 8 and 14 of the Federal Rules of Criminal Procedure**

Multiple offenses may properly be charged together in an indictment or information if the offenses are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." FED. R. CRIM. P. 8(a). Similarly, multiple defendants may properly be charged together in an indictment or information "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." FED. R. CRIM. P. 8(b).

Yet even if properly joined, offenses or defendants may be severed if joinder results in prejudice to a defendant or the government. FED. R. CRIM. P. 14(a). In such a case, the court may provide any relief that justice requires, including ordering separate trials of counts or severing the defendants' trials. Id. But "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993).

**C.     Defendants' Motions for Severance**

Defendant Hunt contends that his case should be severed under Rule 14 because (1) his co-defendants may have made statements to the government that would raise issues under <u>Bruton v. United States</u>, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and (2) he will be unfairly prejudiced by the "spillover effect" of evidence introduced against his co-defendants. Proctor also moves for severance under Rule 14 based on the "spillover effect" and he additionally argues that severance is required because he may be unfairly prejudiced by the introduction of "other act" evidence against his co-defendants. None of these arguments are persuasive.

First, Defendant Hunt's <u>Bruton</u> argument is largely mooted by the government's representation on the record that it will not introduce evidence that implicates <u>Bruton</u>, or, if it does, it will appropriately redact the evidence to cure any <u>Bruton</u> issues. "The crux of [the Confrontation Clause] is that the government cannot introduce at trial statements containing accusations against the defendant unless the accuser takes the stand against the defendant and is available for cross examination." <u>United States v. Jass</u>, 569 F.3d 47, 55 (2d Cir. 2009) (internal quotation marks omitted). In <u>Bruton</u>, the Supreme Court recognized the risks posed by "powerfully incriminating extrajudicial statements of a co-defendant, who stands accused side-by-side with the defendant," which are then "deliberately spread before the jury in a joint trial." <u>Bruton</u>, 391 U.S. at 135-36. Thus, when the statement of a defendant implicates one or more of his co-defendants, <u>Bruton</u> demands "a redaction and substitution adequate to remove the 'overwhelming probability' that a jury will not follow a limiting instruction that precludes its consideration of a redacted

confession against a defendant other than the declarant." Jass, 569 F.3d at 60. Here, given the government's representations, there is no basis for severance and Defendant Hunt's request on this ground is therefore denied.

Second, as to Defendants' requests for severance based on spillover prejudice, neither Hunt nor Proctor has demonstrated that "prejudice would be so great as to deprive him or his right to a fair trial." United States v. Casamento, 887 F.2d 1141, 1149 (2d Cir. 1989). Both argue that they will be unfairly prejudiced if not severed because they are not named in as many counts as other defendants and are not as culpable. But "differing levels of culpability and involvement among defendants and disparities in the quantity of evidence 'are inevitable in any multidefendant trial, and by themselves do not warrant severance.'" United States v. Faltine, No. 13-cr-315 (KAM), 2014 WL 4370811, at *4 (E.D.N.Y. Sept. 2, 2014) (citing United States v. Cardascia, 951 F.2d 474, 483 (2d Cir. 1991)). And the Second Circuit has held that "joint trial involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible." United States v. Locascio, 6 F.3d 924, 947 (2d Cir. 1993). Moreover, because all defendants are charged in the conspiracy counts, what Defendants identify as spillover evidence may actually be properly admissible against them. See United States v. Rosa, 11 F.3d 315, 341 (2d Cir. 1993) ("Evidence at the joint trial of alleged co-conspirators that, because of the alleged conspiratorial nature of the illegal activity, would have been admissible at a separate trial of the moving defendant is neither spillover nor prejudicial.") Consequently, this Court finds no cause to sever either defendant based on spillover prejudice and both requests are denied.

Finally, Defendant Proctor, citing United States v. Figueroa, argues that severance is required on the basis that the government may introduce "other act" evidence against his co-defendants. 618 F.2d 934 (1980). Figueroa, however, does not require severance when "other act" evidence may be admitted; it simply recognizes that the introduction of "other act" evidence, if unfairly prejudicial, could support severance. But here, Defendant Proctor has not identified what "other act" evidence, if any, will unfairly prejudice him, nor does he establish that a limiting instruction would not suffice to cure any possible prejudice. Defendant Proctor's request for severance on this ground is therefore denied.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' Motions for Severance are each denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant Hunt's Motion for Severance (Docket No. 415) is DENIED.

FURTHER, that Defendant Proctor's Motion for Severance (Docket No. 416) is DENIED.

SO ORDERED.

Dated:      February 23, 2015
            Buffalo, New York

                                         /s/William M. Skretny
                                         WILLIAM M. SKRETNY
                                         Chief Judge
                                         United States District Court