UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.  **DECISION AND ORDER**
10-CR-239S (3)

RICKY PROCTOR,

                Defendant.

## I. INTRODUCTION

Defendant Ricky Proctor moves to dismiss the superseding indictment against him on the grounds of prosecutorial misconduct, or alternatively, to preclude a government trial witness and preclude the government from using his proffer statement at trial. (Docket Nos. 533, 535). For the following reasons, Proctor's requests are denied.

## II. FACTS

The government alleges that Proctor is part of the "Rounds Crew," an allegedly violent criminal enterprise led by co-defendant Johnny Rounds that conspired to engage in drug-trafficking and violent criminal activity in the Broadway Market area of the City of Buffalo, NY.

In 2009, the Rounds Crew began feuding with a rival group known as the "LRGP gang," which was trafficking drugs several blocks from where the Rounds Crew operated. The feud escalated when members of the LRGP gang allegedly broke into a Rounds Crew stash house and stole drugs, cash, jewelry, and clothing. Johnny Rounds allegedly told his crew that he wanted members of the LRGP dead in retaliation.

Soon after, members of the Rounds Crew began seeking out and shooting at LRGP members. LRGP members responded in kind. Amid the violence, three people were

murdered: Brandon Haugabook; Larry Crosland; and Shawn Kozma.  Johnny Rounds and alleged members of his crew, including Proctor, are now variously charged in a superseding indictment with these three murders and numerous drug-trafficking and firearms-related offenses.

Proctor, in particular, is charged in seven counts of the 28-count, 8-defendant[1] superseding indictment.  He is accused of committing the following offenses:  (1) RICO conspiracy, with 50 overt acts (18 U.S.C. § 1962(d)); (2) Racketeering, with 26 racketeering acts (18 U.S.C. § 1962(c)); (3) Conspiracy to Possess with Intent to Distribute Marijuana (21 U.S.C. § 846); (4) Maintaining a Drug-Involved Premises (three counts) (21 U.S.C. § 856(a)(1)); and (5) Possession of Firearms in Furtherance of Drug Trafficking (18 U.S.C. §§ 924(c)(1) and 2).  (Docket No. 163.)

On July 8, 2015, Proctor filed a Motion to Dismiss the Indictment based on prosecutorial misconduct.  In short, Proctor maintains that the prosecutor knowingly presented a witness to the grand jury who was represented by the same attorney that represented Proctor.  This, according to Proctor, amounts to putting "tainted evidence" before the grand jury, because the government failed to disclose what Proctor characterizes as a conflict-of-interest situation.

Proctor's presentation of the facts underlying his motion is incomplete and difficult

---

[1]Six of the eight defendants are going to trial on November 3, 2015.  The other two defendants, Adrian Traylor and Mario Watson, previously entered guilty pleas.  (Docket Nos. 72 and 174.)

2

to decipher.[2] The government's memorandum[3] tries to bridge the gaps, but many details remain lacking. Extracting from the submissions, it appears that Proctor and co-defendant Adrian Traylor were at one time both represented in unrelated state court proceedings by Attorney Thomas Eoannou.

In April 2010, Traylor was charged in state court for a murder unrelated to the three charged in the present superseding indictment. Eoannou represented Traylor. At the same time, Traylor also made a proffer to the United States Attorney's Office with regard to the involvement of certain individuals, including Proctor, in various criminal acts, including those presently charged in the superseding indictment. Eoannou represented Traylor during the proffer session.

Two months later, in June 2010, Proctor faced murder charges in state court, apparently related to one of the murders charged in the present case. Eoannou represented Proctor and negotiated a plea offer to include a determinate sentence of 20 years, a no-prosecution agreement with the federal government, and a cooperation agreement. Proctor, however, did not accept the plea offer.

The next month, on or about July 12, 2010, the state court judge presiding over Proctor's case relieved Eoannou as Proctor's attorney, presumably because of his previous representation of Traylor, who was expected to be a trial witness against Proctor. Proctor thereafter proceeded to trial in the state case with new counsel.

Then, on August 3, 2010, Traylor testified before a federal grand jury investigating

---

[2] The facts are set forth narratively in the Affirmation of Michael J. Stachowski, Esq., Docket No. 533.

[3] Docket No. 548.

the instant case. Eoannou and the federal prosecutor arranged for Traylor's grand jury testimony. Traylor testified before the grand jury with the assistance of Attorney Jeremy Schwartz, who was associated with Eoannou. In his grand jury testimony, Traylor implicated Proctor in some of the criminal activity now charged in the superseding indictment.

Later in August 2010, Proctor and Traylor were indicted together in this case. At arraignment on August 20, 2010, Schwartz again represented Traylor and Attorney Tracy Hayes represented Proctor.[4] Four days later, the court assigned Attorney Michael Stachowski to represent Proctor. Stachowski remains Proctor's attorney.

On November 23, 2010, Eoannou appeared at a status conference in this case and requested that he be relieved as Traylor's counsel due to his past representation of both Traylor and Proctor. Thereafter, on November 29, 2010, the court relieved Eoannou and assigned Attorney Patrick Brown to represent Traylor, who eventually entered a guilty plea.

### III. DISCUSSION AND ANALYSIS

#### A. Proceedings Before the Grand Jury

The grand jury is its own constitutional fixture, separate from all three branches of government. See United States v. Williams, 504 U.S. 36, 47, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992). It acts as a referee of sorts between the government and the people. Id. at 47. It has broad investigative power and can "investigate merely on suspicion that the law is being violated, or even because it wants assurance that it is not." United States v. R.

---

[4]Proctor claims that he "ended up with" Attorney Michael D'Amico "when he was indicted in this case." (Docket No. 533, p. 11.) The docket does not reflect D'Amico ever representing Proctor in this action, though the government suggest that D'Amico represented Proctor in state court. (Docket No. 548, p. 8.)

4

Enters., Inc., 498 U.S. 292, 297, 111 S.Ct. 722, 726, 112 L.Ed.2d 795 (1991). The grand jury can keep secret the targets of its investigation, can rely on evidence obtained in violation of the Fourth and Fifth Amendments, and can consider hearsay testimony. See United States v. Calandra, 414 U.S. 338, 346, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). The judiciary's relationship with the grand jury is largely administrative and supervisory—convening the body, administering oaths, issuing subpoenas—but courts retain authority to dismiss returned indictments. See Williams, 504 U.S. at 48.

Dismissal of an indictment due to defects in grand jury proceedings is "the most drastic remedy, and thus is rarely used." United States v. Dyman, 739 F.2d 762, 768 (2d Cir. 1984). Courts may, however, remedy misconduct before the grand jury that prejudices a defendant when prosecutors violate one of the "few, clear rules which were carefully drafted and approved by [the United States Supreme Court] and by Congress to ensure the integrity of the grand jury's functions." United States v. Mechanik, 475 U.S. 66, 74, 106 S.Ct. 93, 89 L.Ed.2d 50 (1986)(O'Connor, J. concurring); Bank of Novia Scotia v. United States, 487 U.S. 250, 254, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1998) ("as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants"). Dismissal is appropriate "'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." Bank of Novia Scotia, 487 U.S. at 256 (quoting Mechanik, 475 U.S. at 78).

**B.     Proctor's Motion to Dismiss**

Proctor's motion is premised on Eoannou's dual representation of himself and

Traylor. Without any evidentiary basis, Proctor claims that Traylor's grand jury and proffer testimony "must have included information that he learned confidentially [from Eoannou] and placed in front of [the prosecutor information] that might compromise [Proctor]." (Docket No. 533, p. 7.) He further maintains that the government engaged in prosecutorial misconduct by presenting Traylor to the grand jury, with full knowledge of Eoannou's dual representation. Proctor accuses the government of knowingly presenting misinformation to the grand jury and mistreating grand jury witnesses,[5] in violation of his constitutional rights.[6] (Docket No. 533, p. 14.) He urges this Court to dismiss the superseding indictment under its supervisory authority over grand jury proceedings.

It is well settled that a properly-returned indictment cannot be challenged on the basis that inadequate or incompetent evidence was presented to the grand jury. See Costello v. United States, 350 U.S. 359, 363-64, 76 S.Ct. 406, 100 L.Ed. 397 (1956); Williams, 487 U.S. at 261 (holding that "the mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment"). Further still, the United States Supreme Court has warned that "[a] complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was 'incomplete' or 'misleading.'" Williams, 504 U.S. at 54.

This is what Proctor argues here. He accuses the government of misleading the

---

[5] Nowhere does Proctor explain how the government mistreated grand jury witnesses. Nor does Proctor explain his further accusation that the government allowed Traylor to "free wheel in the grand jury and this had a direct impact on the indictment." (Docket No. 533, p. 15.) The limited record contains no evidence to support either accusation.

[6] Proctor also cites Rules 6 (d) and (e) of the Federal Rules of Criminal Procedure, which govern who may be present at the grand jury and how grand jury proceedings may be recorded and disclosed. Neither provision of the rule appears to apply.

6

grand jury by presenting "tainted" information that was "suspect at best" through Traylor that Traylor knew only because of Eoannou's dual representation of him and Proctor. (Docket No. 533, pp. 10, 14.) Setting aside the unsubstantiated and purely speculative nature of this claim, it nonetheless amounts to a challenge to the competency of the evidence presented to the grand jury. Entertaining such challenges "would run counter to the whole history of the grand jury institution, and neither justice nor the concept of a fair trial requires it." Id. at 54-55 (citing Costello, 350 U.S. at 364).

But even if Proctor's argument was not legally foreclosed, he provides no evidence whatsoever that Eoannou divulged to Traylor any client confidences that he may have learned from Proctor. For example, Proctor does not point to any information Traylor provided about Proctor that he could only have learned from Eoannou. Proctor has therefore failed to establish prejudice or that the prosecutor's presentation to the grand jury requires the drastic remedy of dismissing the indictment. See Dyman, 739 F.2d at 768.

Proctor also suggests that Eoannou's dual representation violated his Sixth Amendment right to counsel. Although a defendant's Sixth Amendment right to effective assistance of counsel undoubtedly includes the right to conflict-free representation, see LoCascio v. United States, 395 F.3d 51, 56 (2d Cir. 2005), the Sixth Amendment right to counsel does not attach until "at or after the time that adversary judicial proceedings have been initiated," United States v. Gouveia, 467 U.S. 180, 188, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). Consequently, nothing that occurred before the filing of the indictment on

7

August 17, 2010, gives rise to a Sixth Amendment claim.[7] At best, Proctor could in theory assert a Sixth Amendment claim based on Eoannou's and Schwartz's representation of Traylor at arraignment during the very infant stages of this case. But Proctor suffered no prejudice there either, because the court relieved Eoannou (and thereby Schwartz) as Traylor's counsel before Eoannou took any substantive action that would have created the potential for a division of loyalty between Proctor and Traylor.

All said, Proctor has failed to establish that the government violated his Sixth Amendment rights or one of the "few, clear rules which were carefully drafted and approved by [the United States Supreme Court] and by Congress to ensure the integrity of the grand jury's functions," Mechanik, 475 U.S. at 74, or that prosecutors acted in a way that "'substantially influenced the grand jury's decision to indict.'" Bank of Novia Scotia, 487 U.S. at 256 (quoting Mechanik, 475 U.S. at 78). Proctor's Motion to Dismiss the Superseding Indictment is therefore denied, as are his alternative requests to (1) preclude Traylor as a trial witness, and (2) preclude any otherwise permissible use of Proctor's proffer statement, both of which are premised on Proctor's unpersuasive claims of error.

### IV. CONCLUSION

Dismissal of an indictment for grand jury violations is appropriate "'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." Bank of Novia Scotia, 487 U.S. at 256 (quoting Mechanik, 475 U.S. at 78).

---

[7]Proctor appears to concede that the acts about which he complains occurred before August 17, 2010. (Docket No. 533, p. 15 ("In Rounds indictment, there are Sixth Amendment violations prior to the grand jury's indictment.").)

Proctor has established neither basis for dismissal. Consequently, for the reasons set forth above, Proctor's Motion to Dismiss the Superseding Indictment and requests for alternative relief are denied.

**V. ORDER**

IT HEREBY IS ORDERED, that Defendant Proctor's Motion to Dismiss the Superseding Indictment and for Alternative Relief (Docket Nos. 533, 535) is DENIED.

SO ORDERED.

Dated:      August 23, 2015
               Buffalo, New York

                                                        /s/William M. Skretny
                                                         WILLIAM M. SKRETNY
                                                      United States District Judge